UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John P. Alexander, Jr.,

    Plaintiff,

v.

    MEMORANDUM OPINION
    AND ORDER
    Civil No. 04-4159

Progressive Casualty
Insurance Company,

    Defendant.

_____

Ronald E. Seanor, Stoneberg, Giles & Stroup, P.A. for and on behalf of Plaintiff.

Andrew J. Voss, Littler Mendelson, P.C. for and on behalf of Defendant.

_____

This matter is before the Court upon Defendant Progressive Casualty Insurance Company's ("Progressive") motion for summary judgment.

Factual Background

Progressive is in the business of providing motor vehicle insurance. When a claim is made, the claim is investigated and resolved by Progressive's claims personnel, which includes a claims representative. Plaintiff was hired by Progressive as a claims representative in March 2001. Prior to his employment with Progressive, Plaintiff was a claims representative for Hawkeye Claims in Dubuque, Iowa. In late 2000, however, Plaintiff and his family decided to move back to southern Minnesota to be closer to family. A friend put him in touch with

1

someone at Progressive, as he heard Progressive may have openings.

Plaintiff contacted Joel Menden, the manager of Progressive's Faribault office. Menden sent Plaintiff a written application form, which Plaintiff completed and sent back in February 2001. Plaintiff was then interviewed by Menden over the phone. During this conversation, Menden told Plaintiff there was an opening in the Marshall, Minnesota office. A second interview with Menden also took place over the phone. During this conversation, they talked more specifically about the Marshall opening, which was a claims representative position in a one person office. Plaintiff was told that he would be on the road a lot of the time, the rest at a desk. The two also talked of salary and hours to be worked. Alexander Dep. 33-34. Specifically, Menden told Plaintiff he would typically work an eight hour day, the occasional Saturday, and he could expect to work late hours during times of high volume such as after storms or catastrophes. Id.

In March 2001, Plaintiff had an in-person interview with Mike Capuzzi, head of Progressive's Claims Department and Keith Peterson, Regional Manager for Progressive's out-state Minnesota offices. Id. 34. During this interview, Capuzzi and Peterson again discussed hours to be worked, and that he could expect extra work during times of storms or catastrophes. Id. 38.

On March 19, 2001, Joel Menden called Plaintiff and offered him the Marshall position.  Id. 39.  During the phone call, Plaintiff was told what his salary would be, that he would be training in Faribault, and that Progressive would pay his moving expenses.  Id.  Plaintiff thereafter received a letter from Menden confirming the phone conversation.  In the letter, Menden confirmed the following: that Plaintiff had accepted the offer of employment; salary was $35,000 per year; Plaintiff would have to become a certified as a Level I Claims Representative within 15 months of his hire; employment contingent on a background check; during training in Faribault, hours would be 8:30 am to 5:30 pm; after training, Plaintiff would become a member in the Faribault office, and may be asked to work weekends and holidays on a rotating basis. Voss Affidavit, Ex. 3.  Plaintiff alleges that he was also told that Progressive intended to hire an additional person for the Marshall office within the year.  Alexander Dep. 38.

Plaintiff began work for Progressive on April 16, 2001.  He spent the first four to five months in Faribault performing claims work from his desk.  In October 2001, he transferred to the Marshall office.  His territory extended from the Iowa border, up to Big Stone County and down through the middle of Minnesota.

Plaintiff alleges that he was on the road "all day every day".  Id. 132.  His job duties included investigating insurance claims, taking witness statements, examining evidence, and inspecting vehicle and property damage.  He further

alleges that he had no time for record keeping during the day, as he was always on the road. Id.  As a result, he asserts he worked at least 70 to 80 hours per week. Id. 51.

Plaintiff also claims that he was promised promotions that he never got.  He states he completed the requisite certifications, but that he was not promoted because Mended failed to complete enough QA reviews of Plaintiff's work. Id. 52.  Finally, in July 2003, additional help was placed in the Marshall office.  However, Plaintiff ceased active employment in September 2004 because of a medical condition unrelated to his employment.

In his Complaint, Plaintiff asserts four causes of action against Progressive: Violation of the Federal Fair Labor Standards Act; Breach of Minnesota Fair Labor Standards Act; Breach of Employment Agreement; and False Statements as Inducement to Entering Employment.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted). The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

**Counts I and II - Claim for Overtime Wages under Federal and State Law.**

Progressive argues that these claims must be dismissed, as Plaintiff was an exempt employee. That is, under federal and state law, Plaintiff was not entitled to overtime pay if he was employed in an administrative capacity. See 29 U.S.C. § 213(a)(1); Minn. Rule 5200.0200. Plaintiff concedes that he is an exempt employee, but argues that when an employer provides for an additional compensation plan, exempt employees are entitled to make claims under such plan. Plaintiff asserts that Progressive had such a policy, referred to as "sixth day pay".

In support of this argument, Plaintiff cites to Kartheiser v. American National Can Co., 271 F.3d 1135 (8th Cir. 2001). In this case, the plaintiff sued his employer under the Iowa Wage Payment Collection Law, which permits an employee to sue for compensation for labor or services "whether determined on a time, task, piece, commission, or other basis of calculation." Id. at 1136. The employer in this case had a company-wide "Exempt Employee Overtime Program",

and a jury determined that the plaintiff was eligible for compensation under this program.  Id. at 1138.

In this case, the only evidence put forth by Plaintiff of a company policy that provided exempt employees overtime pay is his deposition testimony, and the deposition testimony of Sue Caldwell who staffed the Marshall position prior to Plaintiff.  Plaintiff described this policy as providing for pay when an employee is required to work more than a certain amount of hours per day, and that such policy was paid out at the manager's discretion.  Alexander Dep. at 61-62.  Ms. Caldwell testified at her deposition that she had heard of the policy, but had never sought such pay.  Caldwell Dep. 67.  She stated "I think I heard of somebody in the Sioux Falls office that worked hailstorms in another South Dakota office, and they worked four days here and two days in [another city], and they literally worked six days and they were paid a sixth day."  Id.

Assuming without deciding that Progressive has a policy for sixth day pay, Plaintiff's Complaint only references a statutory right to overtime pay.  The Complaint does not include an allegation of a right to payment under an alleged policy at Progressive referred to as "sixth day pay."  Accordingly, summary judgment is appropriate as to Counts I and II.

**Count III - Breach of Employment Agreement**

In his Complaint, Plaintiff alleges that he was promised advancement to a Level II claims representative within one year, with a commensurate increase in pay. Although Plaintiff qualified for such promotion, he alleges he was not given it. Plaintiff also alleges that he was told he would only be required to work more than 40 hours per week in times of high volume, and during such time he would be provided assistance. Plaintiff alleges he regularly worked 60 to 80 hours per week, and was not provided additional staffing.

Progressive argues that the relevant statute of limitations for a claim for wages, overtime or damages is two years. Minn. Stat. § 541.07. subd. 5. With respect to the breach of contract claim in this case, all of the promises upon which Plaintiff bases this claim occurred on or before the date of his hire, March 19, 2001. As this case was not filed until September 2004, it is time-barred.

Plaintiff responds that to the extent he seeks damages for wages that were due within two years of filing his complaint, such claims are not time-barred. McGoldrick v. DataTrak Intern., Inc., 42 F.Supp.2d 893 (D. Minn. 1999) (citing Levin v. C.O.M.B. Co., 441 N.W.2d 801, 803 (Minn. 1989) (contractual cause of action for lost wages accrues each time a payment is due)).

Even if Plaintiff were entitled to seek lost wages for the two year period prior to the filing of this lawsuit, the Court finds that Plaintiff's claim fails on the

merits. Modifications to at-will employment must be clear and definite and based on evidence that the parties plainly intended to enter into an employment relationship governed by such terms. In this case, Plaintiff admits that in the Application for Employment, he acknowledged that any promise regarding employment was not binding unless it was made in writing. Alexander Dep. Ex.1. He further admits that all of the promises at issue were made orally. Accordingly, Progressive is entitled to judgment as to Count III.

**Count IV - False Statement as Inducement to Entering Employment**

Plaintiff alleges that Progressive's false statements concerning promotions and hours worked are actionable under Minn. Stat. § 181.64. This statute provides it is unlawful for an employer:

> to induce, influence, persuade, or engage any person to change from one place to another in this state, or to change from any place in any state, territory, or country to any place in this state, to work in any branch of labor through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, *concerning the kind or character of such work, the compensation therefor*, the sanitary conditions relating to or surrounding it, or failure to state in any advertisement, proposal, or contract for the employment that there is a strike or lockout at the place of the proposed employment, when in fact such strike or lockout then actually exists in such employment at such place. Any such unlawful acts shall be deemed a false advertisement or misrepresentation for the purposes of this section and section 181.65.

Progressive argues that this claim is time-barred under Minn. Stat. § 541.07(5) because it is essentially a claim for wages. The Court agrees.

The Minnesota Supreme Court has recognized that the distinction between wages and lost income do not alter the nature of the claim, and both are subject to the two year limitation set forth in Minn. Stat. § 541.07(5).  Portlance v. Golden Valley State Bank, 405 N.W.2d 240, 243 (Minn. 1987).  In reliance on this decision, the Minnesota Court of Appeals held that claims asserted under Minn. Stat. § 181.64 are subject to a two year limitation, as such claims are basically an employment claim, the damages of which are lost wages. Progressive Technologies, Inc. v. Shupe, 2005 WL 832059, *5 (Minn. Ct. App. 2005).

In this case, Plaintiff's claim under Minn. Stat. § 181.64 concerns nonpayment of wages for overtime and for a promised promotion with commensurate pay increase.  The claim is thus subject to a two year statute of limitations.

Plaintiff claims that by October 2001, he was transferred to the Marshall position and immediately thereafter worked 70 to 80 hours per week.  As to his claim to a promotion, he asserts such promotion was due one year after his employment commenced, which would have been approximately April 2002.  Plaintiff knew or should have known of the alleged misrepresentations by October 2001 and April 2002 respectively.  This action was not filed, however, until September 2004.  Accordingly, Count IV is time-barred.

IT IS HEREBY ORDERED that Progressive Casualty Insurance Company's Motion for Summary Judgment [Docket No. 9] is GRANTED and this matter dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: November 22, 2005

s / Michael J. Davis
Michael J. Davis
United States District Court

Civil No. 04-4159